IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| JOAKIMA JONES, AS NEXT FRIEND OF A.H. | : | |
| RACHEL WHATLEY, AS NEXT FRIEND OF  M.W. | : | |
| BAYOUSH ALEMAYHU, AS NEXT FRIEND OF H.H. | : | |
| JOAKIMA JONES, INDIVIDUALLY | : | |
| RACHAEL WHATLEY, INDIVIDUALLY | : | |
| BAYOUSH ALEMAYHU, INDIVIDUALLY | : | COMPLAINT |
| | : | |
| Plaintiffs | : | |
| vs. | : | |
| | : | |
| THE DISTRICT OF COLUMBIA | : | |
| | : | |
| | : | |
| Defendant | : | |
| | : | |

_____

## **COMPLAINT**

Plaintiff Joakima Jones, as an individual and as next friend of A.H., Plaintiff Rachel Whatley, as an individual and as next friend of M.W., and Plaintiff Bayoush Alemayhu, as an individual and as next friend of H.H., through the undersigned counsel, hereby allege as follows:

## **STATEMENT OF THE CASE**

Plaintiffs are collectively suing the District of Columbia for assault, battery, seclusion, and discrimination that occurred at the hands of employees and agents of DC Public Schools (DCPS).  At all times relevant to this complaint, the Chancellor, Lewis Ferebee, a mayoral appointee and policy maker, had oversight over DCPS. His office is charged with creating and implementing policy for all of DCPS.  The Chancellor had actual

and constructive notice of several of the allegations raised in this Complaint and has had knowledge of the frequent maltreatment and abuse of students with disabilities who attend River Terrace and other DCPS schools, yet he has acted with deliberate indifference to these students. Despite having notice of these conditions, he has made no efforts to review hiring methods and training programs; implement adequate staffing levels or improve levels of reporting and supervision at DCPS schools who provide direct services to students with disabilities. The mistreatment of disabled students has so altered the educational environment for Plaintiffs and others similarly situated, that it became unequal when compared to the environment for non-disabled students.

## JURISDICTION AND VENUE

1. This is an action under the Fourth, Eighth and Fourteenth Amendments of the United States Constitution, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), the anti-discrimination provisions of Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131 et. seq. ("Title II") and the common law of the District of Columbia, to address violations of Plaintiffs' rights because of their respective disabilities.

2. Jurisdiction over Plaintiffs' federal law claims is founded upon 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).  All claims for violation of Plaintiffs' rights under the laws and the Constitution of the United States are brought pursuant to 42 U.S.C. § 1983.

3. Supplemental jurisdiction over Plaintiffs' state law claims is founded upon 28 U.S.C. § 1367(a), since Plaintiffs' state law claims and federal law claims are derived from

the same operative facts, and as such, said claims form part of the same case or controversy under Article 3 of the United States Constitution.

4.  Venue is proper in the United States District Court for the District of Columbia pursuant to 28 U.S.C. §1391(b)(2), since all of the events, actions and omissions giving rise to the Plaintiffs' claims occurred within this judicial district.

5.  Personal jurisdiction exists over Defendant, as it is a municipal corporation operating under District of Columbia law.

6.  DCPS is a public entity which receives federal financial assistance and is bound by Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504") and the anti-discrimination provisions of Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131 et. seq. ("Title II of ADA").

7.  By accepting federal funds, DCPS waived its sovereign immunity as to claims under Section 504.

8.  At all times relevant times, DCPS has been subject to the provisions of Section 504, which provides that  "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title , shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance..." 29 U.S.C. § 794 (a).

9.   At all relevant times, each of A.H., M.W., and H.H. was a "qualified individual with a disability" under Section 504.

10. The Section 504 regulations at 34 C.F.R. §104.4(b)(1)(i), (ii) and (iii) require that school districts, in providing any aid, benefit or service, may not deny a qualified person with a disability an opportunity to participate, afford a qualified person with a disability an opportunity to participate in or benefit from an aid, benefit or service that is not equal to that afforded to others, or provide a qualified person with a disability with an aid, benefit or service that is not as effective as that provided to others.

11. Effective January 26, 1992, Plaintiffs were entitled to the protections of the "Public Services" provision of Title II of the Americans with Disabilities Act of 1990. Title II, Subpart A prohibits discrimination by any "public entity," including any state or local government, as defined by 42 USC § 12131, section 201 of the ADA.

12. Pursuant to 42 USC §12132, Section 202 of Title II, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity.

13. A.H., H.H., and M.W. meet the definition of a qualified individual with a disability within the meaning of Title II for the purposes of this action.

14. Title II regulations at 28 C.F.R. §35.130(b)(1)(i), (ii) and (iii), require that school districts, in providing any aid, benefit or service, may not deny a qualified person with a disability an opportunity to participate, afford a qualified person with a disability an opportunity to participate in or benefit from an aid, benefit or service that is not equal to that afforded to others, or provide a qualified person with a

disability with an aid, benefit or service that is not as effective as that provided to others.

15. DCPS has at all times been a public entity within the meaning of Title II.

16. A.H., H.H., M.W. has at all times been a qualified person with a disability within the meaning of Title II.

## **PARTIES**

17. Joakima Jones is a resident of the state of Maryland and brings this action on behalf of her minor child, A.H., and on her own behalf as an individual.

18. Plaintiff A.H. is a resident of the state of Maryland.

19. At all relevant times A.H. attended River Terrace Education Campus ("River Terrace") a public school operated by DCPS.

20. Rachel Whatley is a resident of the state of Maryland and brings this action on behalf of her child, M.W., and on her own behalf as an individual.

21. Plaintiff M.W. is a resident of the state of Maryland.

22. At all relevant times M.W. attended River Terrace.

23. Bayoush Alemayhu is a resident of the District of Columbia and brings this action on behalf of her minor child, H.H., and on her own behalf as an individual.

24. Plaintiff H.H. is a resident of the District of Columbia.

25. At all relevant times H.H. attended Walker Jones Education Campus ("Walker Jones"), a public school operated by DCPS.

26. DCPS is a public school district and agency of Defendant. The Chancellor is charged with creating and implementing policy for DCPS.

## NON-PARTY AGENTS OF DCPS

27.     Clinton Turner ("Mr. Turner") was at all relevant times employed by DCPS as the principal at Walker Jones.

28.     All of Mr. Turner's actions and omissions alleged herein were taken under color of state law and in the course and scope of his employment with DCPS.

29.     Dr. Aimee Cepeda Pressley ("Dr. Pressley") was at all relevant times employed by DCPS as the principal at River Terrace.

30.     All of Dr. Pressley's actions and omissions alleged herein were taken under color of state law and in the course and scope of her employment with DCPS.

31.     Nikita Fountain ("Ms. Fountain") was at all relevant times employed by DCPS as a teacher at River Terrace.

32.     All of Ms. Fountain's actions and omissions alleged herein were taken under color of state law and in the course and scope of her employment with DCPS.

33.     Justin Spencer ("Mr. Spencer") was at all relevant times employed by DCPS as an aide at River Terrace.

34.     All of Mr. Spencer's actions and omissions alleged herein were taken under color of state law and in the course and scope of his employment with DCPS.

35.     Edward Archer ("Mr. Archer") was at all relevant times employed by DCPS at Walker Jones as a Director of Special Education and Local Education Agency representative.

36.     All of Mr. Archer's actions and omissions alleged herein were taken under color of state law and in the course and scope of his employment with DCPS.

37.     At all relevant times set forth herein, Dr. Pressley, Mr. Turner, Ms. Fountain and Mr. Archer acted as the agents of Defendant.

38.     Denise Hagley ("Ms. Hagley") was at all relevant times engaged by DCPS as a physical therapist at Walker Jones.    All of Ms. Hagley's actions and omissions alleged herein were taken under color of state law and in the course and scope of her engagement by DCPS.

39.     At all relevant times, Defendant had the right to control and supervise Ms. Hagley.

**FACTUAL ALLEGATIONS**
FACTS PERTAINING TO A.H.

40.     A.H. attended River Terrace Education Campus during the 2018-2019 DCPS school year.

41.     A.H is unusually small for her age.  A.H. is fourteen  years old, is less than five feet tall and weighs approximately fifty-five (55) pounds.

42.     A.H. has multiple disabilities, including intellectual disability, cerebral palsy, Attention Deficit Hyperactivity Disorder, agenesis of the corpus collosum, epilepsy, partial trisomy 14 q, and significant speech and language disabilities.

43.     A.H.'s disabilities impair her ability to conduct major life activities, including but not limited to, speaking, learning, dressing, bathing, toileting.

44.     A.H. enjoyed attending school at River Terrace until on or about May 17, 2019. She frequently told her mother how much she loved her paraeducator "Ms. Speight."

45.     A.H.'s attitude toward River Terrace changed after an incident that took place on or about May 17, 2019.

46. On or about May 17, 2019, Mr. Spencer pushed A.H. in her abdomen, pulled her ear and locked her in a cabinet in a classroom at River Terrace.

47. Mr. Spencer battered and secluded A.H. solely because of A.H.'s disability.

48. Dr. Pressley and other employees of DCPS knew that Mr. Spencer battered and secluded A.H.

49. That same day Dr. Pressley reported the incident to Ms. Jones, A.H.'s mother.

50. Ms. Jones immediately left work and went to the school.  When she arrived, she took A.H. into the restroom and asked her what happened.  A.H. told Ms. Jones that Mr. Spencer pulled her ear, pushed her stomach and locked her in a closet.

51. Upon information and belief, DCPS reported the incident to the Metropolitan Police Department ("MPD").

52. MPD investigated the incident and prepared a Police Report, #19-084806.

53. The report was referred to the U.S. Attorney's Office but they refused to prosecute Mr. Spencer.

54. Upon information and belief, River Terrace officials prepared an incident report but would not allow A.H.'s parents to see the report.

55. Immediately after the incident, A.H. did not want to go to school, had tantrums, became incontinent, did not want to sleep by herself, experienced seizures, was afraid to be in closed spaces alone and spoke of the incident repeatedly to her mother.

56. Ms. Jones took A.H. back to school the week following the incident because she was afraid that the school would report her to Children and Family Services if she kept her out too long.

57.     As soon as Ms. Jones pulled up to the front of the school, A.H. began having panic attacks marked by waves of crying and screaming.   A.H. never acted in such a manner upon arriving at school prior to the incident with Mr. Spencer.

58.     Ms. Jones kept A.H. out of River Terrace until on or around the last week of the 2018-2019 school year.

59.     Ms. Jones took A.H. for counseling during the summer of 2019 because of the trauma she suffered from the incident with Mr. Spencer.

60.     A.H. is currently being treated by a psychologist at Children's National Medical Center.

61.     On August 26, 2019, Ms. Jones attempted to return A.H. back to River Terrace for the start of the 2019-2020 school year.   She assumed that Mr. Spencer was no longer employed at the school due to the incident with her daughter.

62.     Upon entering the school building, A.H.  saw Mr. Spencer and began screaming and crying.

63.     Upon information and belief, Mr. Spencer was employed by Defendant DCPS and working at River Terrace as of August 26, 2019.

64.     A.H.'s father, Tony Harding, reported this event to the Office of the Chancellor on or about August 26, 2019.  Mr. Harding also reported the incident to the DCPS Office of the Chancellor - Chief Office of Integrity, and the DCPS Comprehensive Alternative Resolution and Equity team.

65.     Ms. Jones returned A.H. to school on or about September 16, 2019, after DCPS removed Mr. Spencer from the staff at River Terrace. However, A.H.'s behavior had

changed so drastically due to being exposed to Mr. Spencer repeatedly after the incident that Ms. Jones was forced to remove her from school.

66.    The battery and seclusion of A.H. by Mr. Spencer and DCPS' retention of Mr. Spencer was so severe that it created an unhealthy educational setting for A.H. which constituted a hostile educational environment based on her disability.

67.    The battery and seclusion of A.H. by Mr. Fountain proximately caused A.H. and continues to cause her pain and emotional distress.

68.    Ms. Jones permanently removed A.H. from River Terrace on or about September 30, 2019.

FACTS PERTAINING TO M.W.

69.    M.W. attended River Terrace during the 2018-2019 DCPS school year.

70.    M.W.  is autistic, intellectually disabled and is functionally non-verbal.

71.    Said disabilities significantly impair M.W.'s ability to perform several major life activities, including but not limited to, speaking, learning, bathing, and dressing.

72.    M.W. enjoyed attending school at River Terrace until the occurrence of an incident on January 18, 2019.

73.    On January 18, 2019, M.W. was groaning and waiving his arms in his classroom at River Terrace.  This behavior was a manifestation of his disability.

74.     Observing M.W.'s behavior, Ms. Fountain struck M.W. in the face with her hand, in view of three (3) other adults who worked at River Terrace.

75.    M.W. could not report the incident to his mother because he is functionally non-verbal.

76.   After the incident, M.W. was very agitated, socialized less with people and became more emotionally and physically attached to Ms. Whatley and to his sister.  M.W. did not display these behaviors prior to the incident.

77.   Dr. Pressley and other employees of DCPS knew that Ms. Fountain battered M.W.

78.   A DCPS behavioral assistant called Ms. Whatley to inform her that M.W. was "not having a good day."  Ms. Whatley had just returned from work so she sent M.W.'s sister to the school to pick him up.

79.   Around 2 p.m. that same day, Dr. Pressley phoned Ms. Whatley to inform her that Ms. Fountain struck M.W. in his face.

80.   Ms. Whatley asked Dr. Pressley why Ms. Fountain slapped her child. Dr. Pressley responded that she did not know, so Ms. Whatley called the MPD.

81.   Upon information and belief, Dr. Pressley also reported the incident to the MPD.

82.   Ms. Whatley received a phone call from Officer Melia Dickinson, who asked to interview Ms. Whatley about Ms. Fountain's battery of M.W.

83.   MPD prepared a Public Incident Report, CCN#19010128, which stated that an offense of "simple assault [was] completed [using] hands/feet," and that the assault was witnessed by three individuals.

84.   After hearing what happened, the Officer Dickinson told Ms. Whatley stated that she would recommend that Ms. Fountain be prosecuted but that the U.S. Attorney had total discretion as to whether to prosecute.

85.   The U.S. Attorney's Office declined to prosecute the matter.

86.     Ms. Whatley called the school repeatedly to speak with Dr. Pressley to find out if Ms. Fountain was still employed at River Terrace.  Dr. Pressley did not return her calls.

87.     Finally, Ms. Whatley reached out to the Instructional Superintendent of Cluster 6, Ms. Kim Jackson, and informed her of the incident and the lack of follow-up from Dr. Pressley.

88.     Soon after Ms. Whatley spoke to Ms. Jackson, Dr. Pressley called Ms. Whatley seeming very upset that Ms. Whatley contacted Ms. Jackson about the incident.

89.     Ms. Whatley told Dr. Pressley that she needed to meet with her on a Friday when Ms. Whatley was off from work.  Dr. Pressley refused to meet with Ms. Whatley, saying that all of her Fridays were too "full."

90.     Ms. Whatley feared for M.W.'s physical and psychological safety and well-being.

91.     After the conversation with Dr. Pressley, Ms. Whatley decided not to send M.W. back to River Terrace because Ms. Fountain was still employed there and Dr. Pressley did not appear to be responsive or concerned about her employee's conduct.

92.     Plaintiff Whatley enrolled M.W. at Northwestern High School in Prince George's County Public Schools on or about February 11, 2019.

93.     Ms. Fountain struck M.W. based solely on his disability.

94.     The incident was so severe that it created an unhealthy educational setting for M.W. which constituted a hostile educational environment based on his disability.

95.     The harassment and battery of M.W. by Ms. Fountain proximately caused M.W. and continues to cause him pain and emotional distress.

FACTS PERTAINING TO H.H.

96.     H.H. attended Walker Jones Education Campus during the 2018-2019 DCPS school year.

97.     DCPS determined that H.H. was eligible for specialized instruction and related services under the Individuals with Disabilities Education Act (IDEA).

98.     H.H. has multiple significant disabilities including cerebral palsy, seizure disorder, speech and language impairments and developmental delays, which impair his ability to perform major life activities, including but not limited to standing, walking, talking, eating, dressing, toileting, and cognition.

99.     H.H. is a paraplegic and can ambulate only by using a wheelchair.

100.    H.H. uses an assistive speech generating device in order to communicate.

101.    H.H. enjoyed attending school prior to the 2018-2019 school year.  H.H. enjoyed learning and interacting with peers, teachers, aides and other adults who provided H.H. services pursuant to H.H.'s Individualized Education Program (IEP) plan.

102.    During the 2018-2019 school year, Ms. Hagley provided physical therapy services to H.H. on the school premises.

103.    Ms. Hagley repeatedly and aggressively yelled at H.H. and verbally demeaned him, and she aggressively handled H.H.'s body in such a manner that it caused H.H. pain and discomfort when she provided physical therapy services to H.H.

104.    As a result of Ms. Hagley's conduct, H.H. would frequently cry at school and complain to his mother that he was afraid of Ms. Hagley, that he did not want to receive physical therapy services from Hagley, and that he did not want to attend school.

105.    Ms. Alemayhu complained repeatedly to Mr. Archer and Mr. Turner about Ms. Hagley's treatment of H.H.

106.    Despite Ms. Alemayhu's repeated complaints, DCPS neither investigated her complaints, separated Ms. Hagley from H.H., offered counseling to H.H., replaced Hagley, nor took any action to prevent Ms. Hagley from further harassing H.H.

107.    Despite Ms. Alemayhu's complaints, DCPS retained Ms. Hagley to provide physical therapy services to H.H. during school year 2018-2019.

108.    Ms. Hagley continued to harass H.H. following Ms. Alemayhu's complaints to Mr. Archer and Mr. Turner.

109.    Eventually, on or about June 6, 2019, Ms. Hagley battered H.H. by pinching his nose and covering his mouth so that he could not breathe.

110.    While Ms. Hagley held H.H.'s nose and mouth, H.H. jumped up and down in his wheelchair in an attempt to try to shake her hands from his face so that he could breathe.

111.    The incident was witnessed by other individuals who worked at Walker Jones.

112.    Mr. Turner, Mr. Archer and other employees of DCPS knew that Ms. Hagley battered H.H.

113.    H.H. reported the incident to his mother.

114.    H.H. told his mother that when Ms. Hagley attacked him that he thought he would die, that he was afraid of Ms. Hagley, and that he was afraid to return to school.

115.    Ms. Hagley's battery of H.H. was based solely on H.H.'s disability.

116.    On the evening of June 6,2019, Ms. Alemayhu called Ms. West, an aide at Walker Jones, and Ms. Lee, a math teacher at Walker Jones, to determine if they knew anything about the incident.

117.    Ms. West told Ms. Alemayhu that she witnessed the incident.

118.    Ms. Alemayhu also called Mr. Archer on the evening of June 6, 2019 to determine what he knew about it, but she was unable to contact him.

119.    Ms. Alemayhu also called the MPD on the evening of June 6, 2019 and Officer Kullen Harris of the MPD interviewed Ms. Alemayhu about the incident.

120.    MPD prepared a Public Incident Report, CCN 19098470, and referred the incident to the U.S. Attorney's Office for prosecution.

121.    The U.S. Attorney's Office declined to prosecute the matter.

122.    On or about June 7, 2019, Ms. Alemayhu discussed the incident with Mr. Archer and Mr. Turner.

123.    Upon information and belief, DCPS also prepared a report about the incident, but never provided a copy of the incident report to Ms. Alemayhu.

124.    Upon information and belief, Ms. Hagley continued to be the physical therapist whom DCPS engaged to provide services to H.H. following the occurrence of the incident.

125.    As a result of the incident, on or about June 12, 2019 Plaintiff removed H.H. from Walker Jones because she did not believe that Walker Jones officials would protect H.H. from abuse by Ms. Hagley and she feared for M.W.'s physical and psychological safety and well-being.

126.    On June 18, 2019, Ms. Alemayhu reported the incident to Anitra Allen-King, Director of Resolution within DCPS' Office of the Chief Operations Officer-Innovation and Systems Improvement.

127.    On November 13, 2019, Ms. Alemayhu reported the incident to the Office of the Chancellor of DCPS.  To date, the Chancellor's office has not responded to Ms. Alemayhu.

128.    The harassment and battery of H.H. was so severe that it created an unhealthy educational setting for H.H. at Walker Jones, which constituted a hostile educational environment.

129.    The harassment and battery of H.H. by Ms. Hagley proximately caused H.H., and will continue to cause him pain and emotional distress.

130.    Defendant proximately caused   injury to H.H. by failing to investigate Ms. Alemayhu's complaints about Ms. Hagley's harassment of H.H., failing to promptly report the Ms. Hagley's harassment of H.H. to other responsible DCPS officials, failing to train and monitor Hagley, failing to separate H.H. from Hagley  and failing to replace Hagley after Ms. Alemayhu complained that Hagley harassed H.H.


FACTS PERTAINING TO ALL PLAINTIFFS

131.    At all times relevant to this complaint, the Chancellor, Lewis Ferebee, a mayoral appointee and policy maker, had oversight over DCPS. His office is charged with creating and implementing policy for all of DCPS.

132.    The Chancellor had actual and constructive notice of several of the allegations raised in this Complaint and has had knowledge of the frequent maltreatment and abuse

of students with disabilities who attend River Terrace and other DCPS schools, yet he has acted with deliberate indifference to these students.

133.    Despite having notice of these conditions, he has made no efforts to review hiring methods and training programs; implement adequate staffing levels or improve levels of reporting and supervision at DCPS schools who provide direct services to students with disabilities.

134.    The mistreatment of disabled students has so altered the educational environment for Plaintiffs and others similarly situated, that it became unequal when compared to the environment for non-disabled students.

135.    Upon information and belief, Defendant knew or had constructive notice that individuals who were either employed by DCPS or contractually engaged by DCPS at River Terrace had battered, secluded or harassed other disabled children who attended River Terrace prior to the battery and seclusion of A.H. and the battery of M.W. and H.H.

136.    Despite having said knowledge or constructive notice, Defendant failed to respond appropriately.

137.    Despite having said knowledge or constructive notice, Defendant's actions or omissions made Plaintiffs A.H., M.W., and H.H. vulnerable to battery, harassment and emotional abuse based on their disabilities.

138.    Defendant failed to adequately and properly train and supervise its staff and contractors, subjecting Plaintiffs A.H., M.W., and H.H. to the risk of battery, harassment and emotional abuse.

139.    Defendant failed to provide incident reports of battery, harassment and abuse to the parents of H.H, M.W., and A.H., failed to offer counseling or other socio-emotional services to said Plaintiffs, and retained the individuals who harassed and abused said Plaintiffs after the incidents of harassment and abuse.

140.    Defendant was deliberately indifferent to the harassment of Plaintiffs H.H., A.H., and M.W.

141.    Upon information and belief, River Terrace was and continues to be inadequately staffed to meet the needs of the children whom it serves.

142.    Plaintiffs have filed notices of claim with the Defendant's Office of Risk Management with respect to the allegations set forth in this Complaint.

COUNT I:
**Violation of Constitutional Rights, 42 U.S.C. § 1983**

143.    Plaintiffs incorporate and reallege by reference the foregoing paragraphs 1 through 142 inclusive, as if they were fully set forth herein.

144.    Defendant violated minor Plaintiffs H.H.'s, A.H., and M.W.'s rights under the Fourth Amendment to the United States Constitution by actions, including but not limited to utilizing unjustified and unreasonable force against minor Plaintiffs.

145.    The instances of assault, battery, seclusion and discrimination that occurred in against Plaintiffs put Defendant on notice that not addressing these issues would lead to the deprivation of constitutional rights. To be sure, Plaintiffs Jones and Alemayhu contacted the Chancellor directly about the incidents involving their children and never received any response.

146.    Defendant acted with deliberate indifference to the deprivation of constitutional rights suffered by its most vulnerable residents when it failed to respond to a need for training and supervision of its agents who work with students with disabilities.

147.    Upon information and belief, Defendant continues to act with the deliberate indifference to the deprivation of Plaintiffs' rights.  At all times relevant to the complaint, Defendant has not implemented any training or made policy changes related to the supervision and hiring of agents who work with students with disabilities to ensure that there are not continued violations of students' constitutional rights.

148.    There is also no official policy related to the discipline of individuals who abuse disabled children and those who supervise individuals who abuse disabled children and the disclosure of information to parents of a child who was allegedly abused.

149.    As a proximate result of the Defendant's actions and omissions, Plaintiffs have suffered damages as heretofore alleged.

COUNT II:
**Discrimination in Violation of Section 504 of the Rehabilitation Act of 1973**

150.    Plaintiffs incorporate and reallege by reference therefore going paragraphs 1 through 149 inclusive, as if they were fully set forth herein.

151.    Defendant acted and omitted with deliberate indifference, which caused A.H., H.H., and M.W. to be vulnerable to and subjected to battery.

152.    Defendant acted and omitted with deliberate indifference, which caused H.H. to be vulnerable to and subjected to harassment.

153.    Defendant's actions and omissions were based solely on said Plaintiffs' disabilities.

154.     Defendant's acts and omissions altered said Plaintiffs' education, subjected said Plaintiffs to a hostile educational environment, and denied said Plaintiffs services, programs and activities that were full and equal to programs and activities provided to non-disabled persons.

155.     Defendant's acts and omissions violated said Plaintiffs' rights under § 504 of the Rehabilitation Act of 1973, 29 USC § 794, and the regulations promulgated thereunder.

156.     As a result of the Defendant's failure to comply with its duties under § 504 of the Rehabilitation Act of 1973, 29 USC § 794, and the regulations promulgated thereunder, said Plaintiffs have suffered damages including humiliation, embarrassment and emotional distress as alleged heretofore.

COUNT III:
**Discrimination in Violation of The Americans With Disabilities Act**

157.     Plaintiffs incorporates and realleges by reference the foregoing paragraphs 1 through 156 inclusive, as if they were fully set forth herein.

158.     Defendant acted and omitted with deliberate indifference, which caused A.H., H.H., and M.W. to be vulnerable to and subjected to battery.

159.     Defendant acted and omitted with deliberate indifference, which caused H.H. to be vulnerable to and subjected to harassment.

160.     Defendant's actions and omissions were based on said Plaintiffs' disabilities.

161.     Defendant's actions and omissions altered said Plaintiffs' educations and subjected them to a hostile educational environment, and denied said Plaintiffs services, programs and activities that were full and equal to programs and activities provided to non-disabled persons.

162.     Defendant's actions and omissions violated 42 USC §12132, Section 202 of Title II, and the regulations promulgated thereunder.

163.     As a result of Defendant's failure to comply with its duties under Title II, said Plaintiffs have suffered damages including humiliation, embarrassment and emotional distress as alleged heretofore.

COUNT IV:
**Negligent Supervision**

164.     Plaintiffs incorporates and reallege by reference the foregoing paragraphs 1 through 163 inclusive, as if they were fully set forth herein.

165.     Plaintiffs and Defendant were parties to a school district – pupil relationship at all relevant times.

166.     Plaintiffs were unable to protect themselves from battery, seclusion and harassment by Defendant.

167.     The instruction and services which Defendant provided to Plaintiffs and the premises where Defendant provided said instruction and services were under Defendant's control.

168.     Defendant knew or had constructive knowledge that Ms. Hagley harassed Plaintiff H.H. prior to battering H.H.

169.     Defendant knew or had constructive knowledge that its employees or contractors had harassed or battered other disabled students at River Terrace prior to the harassment and battery of Plaintiffs M.W. and A.H.

170.    Defendant had a duty to Plaintiffs to exercise reasonable care to supervise and control Ms. Fountain, Ms. Hagley, and Mr. Spencer because of DCPS' relationship with Plaintiffs A.H., M.W., and H.H.

171.    Defendant had a duty to Plaintiffs to exercise reasonable care to prevent the battery and harassment of the Plaintiffs.

172.    Defendant breached said duties to said Plaintiffs.

173.    Defendant's breach of its duty of care to said Plaintiffs proximately caused the injuries to the Plaintiffs which are alleged heretofore.

174.    As a result of the Defendant's breach of its duties to said Plaintiffs, the Plaintiffs have suffered damages including humiliation, embarrassment and emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

a.    Enter judgment in Plaintiffs' favor against Defendant for violating their constitutional rights;

b.    Enter judgment in Plaintiffs favor against Defendant for violating Section 504 of the Rehabilitation Act and Title II of the ADA;

c.    Enter judgment in Plaintiffs' favor against Defendant for negligent supervision;

d.    Injunctive relief in the form of a court order requiring the Chancellor to implement new policies related to the following: official hiring standards and procedures for staff who will work with students with disabilities, a review of all training and staffing at all DCPS schools who work with students with disabilities;

implementation of official training and determination on appropriate staffing levels of the same.

e.  Award Plaintiffs' compensatory damages, in the amount of 9 million dollars (9,000,000.00);

f.  Award Plaintiffs' punitive damages, in an amount to be determined at trial;

g.  Award Plaintiffs' attorney's fees and the costs of this litigation;

h.  And any and all further just relief this Court sees fit.

## JURY TRIAL DEMAND

Plaintiffs request a trial by jury.

DATED: January 16, 2020

Respectfully Submitted,
*/s/ Yaida O. Ford*
Yaida O. Ford, Esquire
DC Bar No. 497013
Ford Law Pros, P.C.
10 G Street NE, Suite 600
Washington DC 20002
(202)792-4946 (phone)
yford@fordlawpros.com

*/s/ Nigel M. Atwell*
Nigel M. Atwell, Esquire
The Law Office of Nigel M. Atwell, PLLC
DC Bar Number 422509
1440 G Street NW
Washington, DC 20005
Phone:  202-627-6926
*nigel@lawofficeofnigelmatwell.com*
*Attorneys for Plaintiffs*