IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

|  |  |
|---|---|
| JOAKIMA JONES, AS NEXT FRIEND OF A.H. : | |
| RACHEL WHATLEY, AS NEXT FRIEND OF  M.W. : | |
| BAYOUSH ALEMAYHU, AS NEXT FRIEND OF H.H. : | |
| GOLD UKEGBU, AS NEXT FRIEND OF C.U. : | |
| JOAKIMA JONES, INDIVIDUALLY : | |
| RACHAEL WHATLEY, INDIVIDUALLY : | |
| BAYOUSH ALEMAYHU, INDIVIDUALLY : | |
| GOLD UKEGBU, INDIVIDUALLY : | **FIRST AMENDED** |
| : | **COMPLAINT** |
| : | C.A. No. 20-cv-00128-EGS |
| Plaintiffs : | |
| vs. : | |
| : | |
| THE DISTRICT OF COLUMBIA, : | |
| : | |
| : | |
| Defendant : | |
| : | |

---

<u>FIRST AMENDED COMPLAINT</u>

Plaintiff Joakima Jones, as an individual and as next friend of A.H., Plaintiff Rachel Whatley, as an individual and as next friend of M.W., and Plaintiff Bayoush Alemayhu, as an individual and as next friend of H.H., Plaintiff Gold Ukegbu, as an individual and as next friend of C.U. through the undersigned counsel, hereby allege as follows:

<u>STATEMENT OF THE CASE</u>

Plaintiffs are collectively suing the District of Columbia for assault, battery, seclusion, and discrimination that occurred at the hands of employees and agents of DC Public Schools (DCPS). Students at River Terrace Education Campus (hereafter "River Terrace") are mostly Black students who are severely disabled.   At River Terrace, teachers and staff often hit children and use forms

of restraint and seclusion that are abusive and unlawful.  Due to a lack of staffing and trained aides, children are forced to sit in soiled clothes for hours at a time, and they are not fed or properly cared for according to their special needs.  River Terrace lacks certified behavioral specialists and teachers have witnessed staff hitting River Terrace children.  In this environment, students cannot learn and teachers cannot focus on providing specialized instruction and related services for their students.   Parents, teachers and DCPS employees will testify that they have reported these problems to DCPS officials including the head of DCPS' Division of Specialized Instruction, Kerri Larkin, former Interim Chancellor Amanda Alexander and the current Chancellor, Lewis Ferebee, via email, phone calls, at meetings and direct office visits to no avail.  They have even gone to members of the D.C. Council about the issues at River Terrace but nothing has been done to improve the lot of River Terrace students.

At all times relevant to this complaint, the Chancellor, Lewis Ferebee, a mayoral appointee and policy maker, had oversight over DCPS.  His office is charged with creating and implementing policy for all of DCPS.  The Chancellor and other DCPS officials had actual and constructive notice of the systemic problems within River Terrace, including the lack of training in the area of behavioral support, lack of certified behavioral specialists, lack of de-escalation tools for students and staff, lack of nursing staff to accommodate the times that children are in the building, and lack of adequate staffing in classrooms to name a few of the issues.  In the end, River Terrace students are being deprived of their fundamental right to an education.  The Chancellor and other DCPS officials ignored each and every plea for help from parents, teachers and other River Terrace staff. The Chancellor also had actual and constructive notice of several of the allegations raised in this Amended Complaint and has had knowledge of the frequent maltreatment and abuse of students with disabilities who attend River Terrace and other DCPS schools, yet he has acted with deliberate

indifference to these students. Despite having notice of these conditions, he has made no efforts to review hiring methods and training programs, implement adequate staffing levels or improve levels of reporting and supervision at DCPS schools who provide direct services to students with disabilities. The mistreatment of disabled students has so altered the educational environment for Plaintiffs and others similarly situated, that it became unequal when compared to the environment for non-disabled students.

## JURISDICTION AND VENUE

1.      This is an action under the Fourth, Eighth and Fourteenth Amendments of the United States Constitution, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), the anti-discrimination provisions of Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131 et. seq. ("Title II") and the common law of the District of Columbia, to address violations of Plaintiffs' rights because of their respective disabilities.

2.      Jurisdiction over Plaintiffs' federal law claims is founded upon 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).  All claims for violation of Plaintiffs' rights under the laws and the Constitution of the United States are brought pursuant to 42 U.S.C. § 1983.

3.      Supplemental jurisdiction over Plaintiffs' state law claims is founded upon 28 U.S.C. § 1367(a), since Plaintiffs' state law claims and federal law claims are derived from the same operative facts, and as such, said claims form part of the same case or controversy under Article 3 of the United States Constitution.

4.      Venue is proper in the United States District Court for the District of Columbia pursuant to 28 U.S.C. §1391(b)(2), since all of the events, actions and omissions giving rise to the Plaintiffs' claims occurred within this judicial district.

5.      Personal jurisdiction exists over Defendant, as it is a municipal corporation operating under District of Columbia law.

6.      DCPS is a public entity which receives federal financial assistance and is bound by Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504") and the anti-discrimination provisions of Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131 et. seq. ("Title II of ADA").

7.      By accepting federal funds, DCPS waived its sovereign immunity as to claims under Section 504.

8.      At all times relevant times, DCPS has been subject to the provisions of Section 504, which provides that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title , shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 U.S.C. § 794 (a).

9.      At all relevant times, each of A.H., M.W., C.U. and H.H. was a "qualified individual with a disability" under Section 504.

10.     The Section 504 regulations at 34 C.F.R. §104.4(b)(1)(i), (ii) and (iii) require that school districts, in providing any aid, benefit or service, may not deny a qualified person with a disability an opportunity to participate, afford a qualified person with a disability an opportunity to participate in or benefit from an aid, benefit or service that is not equal to that afforded to others, or provide a qualified person with a disability with an aid, benefit or service that is not as effective as that provided to others.

11.     Effective January 26, 1992, Plaintiffs were entitled to the protections of the "Public Services" provision of Title II of the Americans with Disabilities Act of 1990. Title II, Subpart A

prohibits discrimination by any "public entity," including any state or local government, as defined by 42 USC § 12131, section 201 of the ADA.

12.     Pursuant to 42 USC §12132, Section 202 of Title II, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity.

13.     A.H., H.H., C.U. and M.W. meet the definition of a qualified individual with a disability within the meaning of Title II for the purposes of this action.

14.     Title II regulations at 28 C.F.R. §35.130(b)(1)(i), (ii) and (iii), require that school districts, in providing any aid, benefit or service, may not deny a qualified person with a disability an opportunity to participate, afford a qualified person with a disability an opportunity to participate in or benefit from an aid, benefit or service that is not equal to that afforded to others, or provide a qualified person with a disability with an aid, benefit or service that is not as effective as that provided to others.

15.     DCPS has at all times been a public entity within the meaning of Title II.

16.     A.H., H.H., M.W. and C.U. has at all times been a qualified person with a disability within the meaning of Title II.

<u>PARTIES</u>

17.     Joakima Jones is a resident of the state of Maryland and brings this action on behalf of her minor child, A.H., and on her own behalf as an individual.

18.     Plaintiff A.H. is a resident of the state of Maryland.

19.     At all relevant times A.H. attended River Terrace Education Campus ("River Terrace") a public school operated by DCPS.

20.     Rachel Whatley is a resident of the state of Maryland and brings this action on behalf of her child, M.W., and on her own behalf as an individual.

21.     Plaintiff M.W. is a resident of the state of Maryland.

22.     At all relevant times M.W. attended River Terrace.

23.     Bayoush Alemayhu is a resident of the District of Columbia and brings this action on behalf of her minor child, H.H., and on her own behalf as an individual.

24.     Plaintiff H.H. is a resident of the District of Columbia.

25.     At all relevant times H.H.  attended Walker Jones Education Campus ("Walker Jones"), a public school operated by DCPS.

26.     Gold Ukegbu is a resident of the District of Columbia and brings this action on behalf of her child C.U., and on her own behalf as an individual.

27.     DCPS is a public school district and agency of Defendant.  The Chancellor is charged with creating and implementing policy for DCPS.

<u>NON-PARTY AGENTS OF DCPS</u>

28.     Clinton Turner ("Mr. Turner") was at all relevant times employed by DCPS as the principal at Walker Jones.

29.     All of Mr. Turner's actions and omissions alleged herein were taken under color of state law and in the course and scope of his employment with DCPS.

30.      Dr. Aimee Cepeda Pressley ("Dr. Pressley") was at all relevant times employed by DCPS as the principal at River Terrace.

31.     All of Dr. Pressley's actions and omissions alleged herein were taken under color of state law and in the course and scope of her employment with DCPS.

32.     Nikita Fountain ("Ms. Fountain") was at all relevant times employed by DCPS as a teacher at River Terrace.

33.     All of Ms. Fountain's actions and omissions alleged herein were taken under color of state law and in the course and scope of her employment with DCPS.

34.      Justin Spencer ("Mr. Spencer") was at all relevant times employed by DCPS as an aide at River Terrace.

35.     All of Mr. Spencer's actions and omissions alleged herein were taken under color of state law and in the course and scope of his employment with DCPS.

36.      Edward Archer ("Mr. Archer") was at all relevant times employed by DCPS at Walker Jones as a Director of Special Education and Local Education Agency representative.

37.     All of Mr. Archer's actions and omissions alleged herein were taken under color of state law and in the course and scope of his employment with DCPS.

38.     Sue Bradley ("Ms. Bradley") was at all relevant times engaged by DCPS as a teacher at River Terrace. All of Ms. Bradley's actions and omissions alleged herein were taken under color of state law and in the course and scope of her employment by DCPS.

39.     At all relevant times set forth herein, Ms. Bradley, Dr. Pressley, Mr. Turner, Ms. Fountain and Mr. Archer acted as the agents of Defendant.

40.     Denise Hagley ("Ms. Hagley") was at all relevant times engaged by DCPS as a physical therapist at Walker Jones.   All of Ms. Hagley's actions and omissions alleged herein were taken under color of state law and in the course and scope of her engagement by DCPS.

41.     At all relevant times, Defendant had the right to control and supervise Ms. Hagley.

<u>FACTUAL ALLEGATIONS</u>

FACTS PERTAINING TO C.U.

(Child who came whom with broken bones)

1.      C.U. is a non-verbal, developmentally delayed, wheelchair bound child, who has multiple disabilities including Trisomy 18, scoliosis, spasticity, and aspiration pneumonia. C.U. attended River Terrace Education Campus, during the 2019-2020 school year.

2.      DCPS determined that C.U. is a child with a disability within the meaning of the Individuals with Disabilities Education Act, and provides specialized instruction and related services to C.U.  DCPS also provides transportation to C.U. to and from school, though the Office of the State Superintendent for Education ("OSSE").

3.      C.U cannot stand or walk, has a feeding tube to receive nutrition and is completely dependent on her parent, her school teachers, and other caregivers for practically every activity of everyday living.

4.      School staff at River Terrace provide specialized instruction and care for C.U. including feeding, assistance with toileting and changing.  To the best of Ms. Ukegbu's knowledge, at school, the only time that school staff removes C.U. from her wheelchair is to assist her with toileting and changing.

5.      C.U. attended school on October 15, 2019 and to the best of Ms. Ukegbu's knowledge, based on her discussion with school staff, C.U. was constantly in the care of OSSE and DCPS on that day.

6.      After C.U. returned home from school that day, Ms. Ukegbu noticed that C.U. was making sounds and that her facial expression showed that she was in excruciating pain.  Ms. Ukegbu also noticed that one of C.U.'s legs was extremely swollen.  Ms. Ukegbu took her child to the hospital,

where doctors determined that C.U. had a broken femur, which is the largest and strongest bone in the human body.

7.      On or about October 22, 2019, River Terrace hosted a meeting which was attended by Ms. Ukegbu, the child's teacher, Ms. Sue Bradley (a school official), other DCPS officials and Ms. Ukegbu's advocate, attorney Donovan Anderson, who is also Chairperson of the District of Columbia Alcohol Beverage Control Board.

8.       At that meeting, school officials represented that DCPS would investigate the incident. However, following the meeting, no one from DCPS contacted Ms. Ukegbu or C.U.'s doctors about the injury or the circumstances surrounding it.

9.      Despite repeated requests by Ms. Ukegbu and her advocate following the meeting, DCPS officials did not communicate with either of them regarding an investigation, provide them with the results of any investigation or provide them an investigation report.

10.     Despite Mr. Anderson's request, neither Ms. Ukegbu nor Mr. Anderson have received an investigation report from DCPS.

11.     Since the injury occurred, C.U. returned to school and the same teacher and assistant teacher who staffed C.U.'s class before and on the day of the injury continued to staff that classroom on and following the date of C.U.'s return to school.

12.     To the best of Ms. Ukegbu's knowledge, neither C.U.'s classroom teacher nor any school administrator reported the leg injury to appropriate District of Columbia agencies such as the Child and Family Services Agency or D.C. Police.

13.     Ms. Ukegbu reported the incident to D.C. Child and Family Services Agency, who told her to call D.C. Police.  Ms. Ukegbu then reported the incident to D.C. Police, who interviewed her and wrote a one sentence report.

14.    Neither CFSA nor any other District of Columbia agency contacted Ms. Ukegbu or interviewed her about the incident, and to the best of her knowledge did not investigate the incident.

15.    One week before C.U. suffered the broken femur, Ms. Ukegbu noticed that C.U. had a skin injury on her lower back which C.U. did not have when she left home to go to school in the morning.

16.    Ms. Ukegbu reported the skin injury to school staff and the Chancellor, but to the best of Ms. Ukegbu's knowledge, the school did not investigate the incident or provide Ms. Ukegbu a report on any investigation of the incident.

17.    To the best of Ms. Ukegbu's knowledge, neither C.U.'s classroom teacher nor any school administrator reported the skin injury to appropriate District of Columbia agencies such as the Child and Family Services Agency or D.C. Police.

FACTS PERTAINING TO A.H.

(Child who was locked in closet)

18.    A.H. attended River Terrace Education Campus during the 2018-2019 DCPS school year.

19.    A.H is unusually small for her age.  A.H. is fourteen  years old, is less than five feet tall and weighs approximately fifty-five (55) pounds.

20.    A.H. has multiple disabilities, including intellectual disability, cerebral palsy, Attention Deficit Hyperactivity Disorder, agenesis of the corpus collosum, epilepsy, partial trisomy 14 q, and significant speech and language disabilities.

21.    A.H.'s disabilities impair her ability to conduct major life activities, including but not limited to, speaking, learning, dressing, bathing, toileting.

22.    A.H. enjoyed attending school at River Terrace until on or about May 17, 2019. She frequently told her mother how much she loved her paraeducator "Ms. Speight."

23.    A.H.'s attitude toward River Terrace changed after an incident that took place on or about May 17, 2019.

24.    On or about May 17, 2019, Mr. Spencer pushed A.H. in her abdomen, pulled her ear and locked her in a cabinet in a classroom at River Terrace.

25.    Mr. Spencer battered and secluded A.H. solely because of A.H.'s disability.

26.    Dr. Pressley and other employees of DCPS knew that Mr. Spencer battered and secluded A.H.

27.    That same day Dr. Pressley reported the incident to Ms. Jones, A.H.'s mother.

28.    Ms. Jones immediately left work and went to the school.  When she arrived, she took A.H. into the restroom and asked her what happened.  A.H. told Ms. Jones that Mr. Spencer pulled her ear, pushed her stomach and locked her in a closet.

29.    Upon information and belief, DCPS reported the incident to the Metropolitan Police Department ("MPD").

30.    MPD investigated the incident and prepared a Police Report, #19-084806.

31.    The report was referred to the U.S. Attorney's Office but they refused to prosecute Mr. Spencer.

32.    Upon information and belief, River Terrace officials prepared an incident report but would not allow A.H.'s parents to see the report.

33.    Immediately after the incident, A.H. did not want to go to school, had tantrums, became incontinent, did not want to sleep by herself, experienced seizures, was afraid to be in closed spaces alone and spoke of the incident repeatedly to her mother.

34.    Ms. Jones took A.H. back to school the week following the incident because she was afraid that the school would report her to Children and Family Services if she kept her out too long.

35.    As soon as Ms. Jones pulled up to the front of the school, A.H. began having panic attacks marked by waves of crying and screaming.   A.H. never acted in such a manner upon arriving at school prior to the incident with Mr. Spencer.

36.    Ms. Jones kept A.H. out of River Terrace until on or around the last week of the 2018-2019 school year.

37.    Ms. Jones took A.H. for counseling during the summer of 2019 because of the trauma she suffered from the incident with Mr. Spencer.

38.    A.H. is currently being treated by a psychologist at Children's National Medical Center.

39.    On August 26, 2019, Ms. Jones attempted to return A.H. back to River Terrace for the start of the 2019-2020 school year.  She assumed that Mr. Spencer was no longer employed at the school due to the incident with her daughter.

40.    Upon entering the school building, A.H.  saw Mr. Spencer and began screaming and crying.

41.    Upon information and belief, Mr. Spencer was employed by Defendant DCPS and working at River Terrace as of August 26, 2019.

42.    A.H.'s father, Tony Harding, reported this event to the Office of the Chancellor on or about August 26, 2019.  Mr. Harding also reported the incident to the DCPS Office of the Chancellor - Chief Office of Integrity, and the DCPS Comprehensive Alternative Resolution and Equity team.

43.    Ms. Jones returned A.H. to school on or about September 16, 2019, after DCPS removed Mr. Spencer from the staff at River Terrace. However, A.H.'s behavior had changed so drastically due to being exposed to Mr. Spencer repeatedly after the incident that Ms. Jones was forced to remove her from school.

44.   The battery and seclusion of A.H. by Mr. Spencer and DCPS' retention of Mr. Spencer was so severe that it created an unhealthy educational setting for A.H. which constituted a hostile educational environment based on her disability.

45.   The battery and seclusion of A.H. by Mr. Fountain proximately caused A.H. and continues to cause her pain and emotional distress.

46.   Ms. Jones permanently removed A.H. from River Terrace on or about September 30, 2019.

## FACTS PERTAINING TO M.W.

### (Child struck in the face)

47.   M.W. attended River Terrace during the 2018-2019 DCPS school year.

48.   M.W.  is autistic, intellectually disabled and is functionally non-verbal.

49.   Said disabilities significantly impair M.W.'s ability to perform several major life activities, including but not limited to, speaking, learning, bathing, and dressing.

50.   M.W. enjoyed attending school at River Terrace until the occurrence of an incident on January 18, 2019.

51.   On January 18, 2019, M.W. was groaning and waiving his arms in his classroom at River Terrace.  This behavior was a manifestation of his disability.

52.    Observing M.W.'s behavior, Ms. Fountain struck M.W. in the face with her hand, in view of three (3) other adults who worked at River Terrace.

53.   M.W. could not report the incident to his mother because he is functionally non-verbal.

54.   After the incident, M.W. was very agitated, socialized less with people and became more emotionally and physically attached to Ms. Whatley and to his sister.  M.W. did not display these behaviors prior to the incident.

55.   Dr. Pressley and other employees of DCPS knew that Ms. Fountain battered M.W.

56.     A DCPS behavioral assistant called Ms. Whatley to inform her that M.W. was "not having a good day."  Ms. Whatley had just returned from work so she sent M.W.'s sister to the school to pick him up.

57.     Around 2 p.m. that same day, Dr. Pressley phoned Ms. Whatley to inform her that Ms. Fountain struck M.W. in his face.

58.     Ms. Whatley asked Dr. Pressley why Ms. Fountain slapped her child. Dr. Pressley responded that she did not know, so Ms. Whatley called the MPD.

59.     Upon information and belief, Dr. Pressley also reported the incident to the MPD.

60.     Ms. Whatley received a phone call from Officer Melia Dickinson, who asked to interview Ms. Whatley about Ms. Fountain's battery of M.W.

61.     MPD prepared a Public Incident Report, CCN#19010128, which stated that an offense of "simple assault [was] completed [using] hands/feet," and that the assault was witnessed by three individuals.

62.     After hearing what happened, the Officer Dickinson told Ms. Whatley stated that she would recommend that Ms. Fountain be prosecuted but that the U.S. Attorney had total discretion as to whether to prosecute.

63.     The U.S. Attorney's Office declined to prosecute the matter.

64.     Ms. Whatley called the school repeatedly to speak with Dr. Pressley to find out if Ms. Fountain was still employed at River Terrace.  Dr. Pressley did not return her calls.

65.     Finally, Ms. Whatley reached out to the Instructional Superintendent of Cluster 6, Ms. Kim Jackson, and informed her of the incident and the lack of follow-up from Dr. Pressley.

66.     Soon after Ms. Whatley spoke to Ms. Jackson, Dr. Pressley called Ms. Whatley seeming very upset that Ms. Whatley contacted Ms. Jackson about the incident.

67.     Ms. Whatley told Dr. Pressley that she needed to meet with her on a Friday when Ms. Whatley was off from work.  Dr. Pressley refused to meet with Ms. Whatley, saying that all of her Fridays were too "full."

68.     Ms. Whatley feared for M.W.'s physical and psychological safety and well-being.

69.     After the conversation with Dr. Pressley, Ms. Whatley decided not to send M.W. back to River Terrace because Ms. Fountain was still employed there and Dr. Pressley did not appear to be responsive or concerned about her employee's conduct.

70.     Plaintiff Whatley enrolled M.W. at Northwestern High School in Prince George's County Public Schools on or about February 11, 2019.

71.     Ms. Fountain struck M.W. based solely on his disability.

72.     The incident was so severe that it created an unhealthy educational setting for M.W. which constituted a hostile educational environment based on his disability.

73.     The harassment and battery of M.W. by Ms. Fountain proximately caused M.W. and continues to cause him pain and emotional distress.

FACTS PERTAINING TO H.H.

(Child assaulted and harassed)

74.     H.H. attended Walker Jones Education Campus during the 2018-2019 DCPS school year.

75.     DCPS determined that H.H. was eligible for specialized instruction and related services under the Individuals with Disabilities Education Act (IDEA).

76.     H.H. has multiple significant disabilities including cerebral palsy, seizure disorder, speech and language impairments and developmental delays, which impair his ability to perform major life activities, including but not limited to standing, walking, talking, eating, dressing, toileting, and cognition.

15

77.     H.H. is a paraplegic and can ambulate only by using a wheelchair.

78.     H.H. uses an assistive speech generating device in order to communicate.

79.     H.H. enjoyed attending school prior to the 2018-2019 school year.  H.H. enjoyed learning and interacting with peers, teachers, aides and other adults who provided H.H. services pursuant to H.H.'s Individualized Education Program (IEP) plan.

80.     During the 2018-2019 school year, Ms. Hagley provided physical therapy services to H.H. on the school premises.

81.     Ms. Hagley repeatedly and aggressively yelled at H.H. and verbally demeaned him, and she aggressively handled H.H.'s body in such a manner that it caused H.H. pain and discomfort when she provided physical therapy services to H.H.

82.     As a result of Ms. Hagley's conduct, H.H. would frequently cry at school and complain to his mother that he was afraid of Ms. Hagley, that he did not want to receive physical therapy services from Hagley, and that he did not want to attend school.

83.     Ms. Alemayhu complained repeatedly to Mr. Archer and Mr. Turner about Ms. Hagley's treatment of H.H.

84.     Despite Ms. Alemayhu's repeated complaints, DCPS neither investigated her complaints, separated Ms.  Hagley from H.H., offered counseling to H.H., replaced Hagley, nor took any action to prevent Ms.  Hagley from further harassing H.H.

85.     Despite Ms. Alemayhu's complaints, DCPS retained Ms. Hagley to provide physical therapy services to H.H. during school year 2018-2019.

86.     Ms. Hagley continued to harass H.H. following Ms. Alemayhu's complaints to Mr. Archer and Mr. Turner.

87.     Eventually, on or about June 6, 2019, Ms. Hagley battered H.H. by pinching his nose and covering his mouth so that he could not breathe.

88.     While Ms. Hagley held H.H.'s nose and mouth, H.H. jumped up and down in his wheelchair in an attempt to try to shake her hands from his face so that he could breathe.

89.     The incident was witnessed by other individuals who worked at Walker Jones.

90.     Mr. Turner, Mr. Archer and other employees of DCPS knew that Ms. Hagley battered H.H.

91.     H.H. reported the incident to his mother.

92.     H.H. told his mother that when Ms. Hagley attacked him that he thought he would die, that he was afraid of Ms. Hagley, and that he was afraid to return to school.

93.     Ms. Hagley's battery of H.H. was based solely on H.H.'s disability.

94.     On the evening of June 6,2019, Ms. Alemayhu called Ms. West, an aide at Walker Jones, and Ms. Lee, a math teacher at Walker Jones, to determine if they knew anything about the incident.

95.     Ms. West told Ms. Alemayhu that she witnessed the incident.

96.     Ms. Alemayhu also called Mr. Archer on the evening of June 6, 2019 to determine what he knew about it, but she was unable to contact him.

97.     Ms. Alemayhu also called the MPD on the evening of June 6, 2019 and Officer Kullen Harris of the MPD interviewed Ms. Alemayhu about the incident.

98.     MPD prepared a Public Incident Report, CCN 19098470, and referred the incident to the U.S. Attorney's Office for prosecution.

99.     The U.S. Attorney's Office declined to prosecute the matter.

100.    On or about June 7, 2019, Ms. Alemayhu discussed the incident with Mr. Archer and Mr. Turner.

101.    Upon information and belief, DCPS also prepared a report about the incident, but never provided a copy of the incident report to Ms. Alemayhu.

102.    Upon information and belief, Ms. Hagley continued to be the physical therapist whom DCPS engaged to provide services to H.H. following the occurrence of the incident.

103.    As a result of the incident, on or about June 12, 2019 Plaintiff removed H.H. from Walker Jones because she did not believe that Walker Jones officials would protect H.H. from abuse by Ms. Hagley and she feared for M.W.'s physical and psychological safety and well-being.

104.    On June 18, 2019, Ms. Alemayhu reported the incident to Anitra Allen-King, Director of Resolution within DCPS' Office of the Chief Operations Officer-Innovation and Systems Improvement.

105.    On November 13, 2019, Ms. Alemayhu reported the incident to the Office of the Chancellor of DCPS.  To date, the Chancellor's office has not responded to Ms. Alemayhu.

106.    The harassment and battery of H.H. was so severe that it created an unhealthy educational setting for H.H. at Walker Jones, which constituted a hostile educational environment.

107.    The harassment and battery of H.H. by Ms. Hagley proximately caused H.H., and will continue to cause him pain and emotional distress.

108.    Defendant proximately caused  injury to H.H. by failing to investigate Ms. Alemayhu's complaints about Ms. Hagley's harassment of H.H., failing to promptly report the Ms. Hagley's harassment of H.H. to other responsible DCPS officials, failing to train and monitor Hagley, failing to separate H.H. from Hagley  and failing to replace Hagley after Ms. Alemayhu complained that Hagley harassed H.H.

FACTS PERTAINING TO ALL PLAINTIFFS

109.     At all times relevant to this complaint, the Chancellor, Lewis Ferebee  a mayoral appointee and policy maker, had oversight over DCPS. His office is charged with creating and implementing policy for all of DCPS.

110.     The Chancellor had actual and constructive notice of several of the allegations raised in this Complaint.  The Chancellor and his predecessors had knowledge of the frequent maltreatment and abuse of students with disabilities who attend River Terrace and other DCPS schools, yet they acted with deliberate indifference to these students.

111.     To be sure, teachers, parents, advocates and DCPS staff reported several of the incidents involving the Plaintiffs to the Chancellor and his chain of command.

112.     The Chancellor and his predecessors were also on notice of the systemic issues that permeated the environment at River Terrace including the lack of funding to the point that River Terrace student's FAPE was violated and the inability of River Terrace teachers to work on their students' daily goals, thereby depriving River Terrace students and Plaintiffs of their right to an education.

113.     The Chancellor (including his predecessors) and his chain of command have been apprised, through formal and informal complaints, meetings, emails and other communications, that River Terrace has no certified behavioral specialists, that students have been physically assaulted, that there are no investigations into claims of DCPS staff misconduct/student abuse.

114.     Despite having notice of these conditions, he has made no efforts to review hiring methods and training programs, implement adequate staffing levels or improve levels of reporting and supervision at DCPS schools who provide direct services to students with profound and complex disabilities.

115.    The mistreatment of severely disabled students has so altered the educational environment for Plaintiffs and others similarly situated, that it became unequal when compared to the environment for non-disabled students.

116.    Upon information and belief, Defendant knew or had constructive notice that individuals who were either employed by DCPS or contractually engaged by DCPS at River Terrace had battered, secluded or harassed other disabled children who attended River Terrace prior to the battery and seclusion of A.H. and the battery of C.U., M.W. and H.H.

117.    Despite having said knowledge or constructive notice, Defendant failed to respond appropriately.

118.    Despite having said knowledge or constructive notice, Defendant's actions or omissions made Plaintiffs A.H., C.U. M.W., and H.H. vulnerable to battery, harassment and emotional abuse based on their disabilities.

119.    Defendant failed to adequately and properly train and supervise its staff and contractors, subjecting Plaintiffs A.H., C.U. M.W., and H.H. to the risk of battery, harassment and emotional abuse.

120.    Defendant failed to provide incident reports of battery, harassment and abuse to the parents of C.U. H.H, M.W., and A.H., failed to offer counseling or other socio-emotional services to said Plaintiffs, and retained the individuals who harassed and abused said Plaintiffs after the incidents of harassment and abuse.

121.    Defendant was deliberately indifferent to the harassment of Plaintiffs C.U. H.H., A.H., and M.W.

122.    Upon information and belief, River Terrace was and continues to be inadequately staffed to meet the needs of the children whom it serves.

123.    Plaintiffs have filed notices of claim with the Defendant's Office of Risk Management with respect to the allegations set forth in this Complaint.

## COUNT I:
## Violation of Constitutional Rights, 42 U.S.C. § 1983

124.    Plaintiffs incorporate and reallege by reference the foregoing paragraphs 1 through 138 inclusive, as if they were fully set forth herein.

125.    Defendant violated minor Plaintiffs C.U., H.H. A.H., and M.W.'s rights under the Fourth Amendment to the United States Constitution by actions, including but not limited to utilizing unjustified and unreasonable force against minor Plaintiffs.

126.    The instances of assault, battery, seclusion and discrimination that occurred in against Plaintiffs put Defendant on notice that not addressing these issues would lead to the deprivation of constitutional rights. To be sure, Plaintiffs Jones and Alemayhu notified the Chancellor directly about the incidents involving their children and never received any response.  Plaintiff Ukegbu also notified the Chancellor only to receive no corrective or remedial response.

127.    Defendant acted with deliberate indifference to the deprivation of constitutional rights suffered by its most vulnerable residents when it failed to respond to a need for training and supervision of its agents who work with students with disabilities.

128.    Upon information and belief, Defendant continues to act with the deliberate indifference to the deprivation of Plaintiffs' rights.  At all times relevant to the complaint, Defendant has not implemented any training or made policy changes related to the supervision and hiring of agents who work with students with disabilities to ensure that there are not continued violations of students' constitutional rights.

129.     There is also no official policy related to the discipline of individuals who abuse disabled children and those who supervise individuals who abuse disabled children and the disclosure of information to parents of a child who was allegedly abused.

130.     As a proximate result of the Defendant's actions and omissions, Plaintiffs have suffered damages as heretofore alleged.

COUNT II:
Discrimination in Violation of Section 504 of the Rehabilitation Act of 1973

131.     Plaintiffs incorporate and reallege by reference therefore going paragraphs 1 through 144 inclusive, as if they were fully set forth herein.

132.     Defendant acted and omitted with deliberate indifference, which caused A.H., H.H., C.U. and M.W. to be vulnerable to and subjected to battery.

133.     Defendant acted and omitted with deliberate indifference, which caused H.H. to be vulnerable to and subjected to harassment.

134.     Defendant's actions and omissions were based solely on said Plaintiffs' disabilities.

135.     Defendant's acts and omissions altered said Plaintiffs' education, subjected said Plaintiffs to a hostile educational environment, and denied said Plaintiffs services, programs and activities that were full and equal to programs and activities provided to non-disabled persons.

136.     Defendant's acts and omissions violated said Plaintiffs' rights under § 504 of the Rehabilitation Act of 1973, 29 USC § 794, and the regulations promulgated thereunder.

137.     As a result of the Defendant's failure to comply with its duties under § 504 of the Rehabilitation Act of 1973, 29 USC § 794, and the regulations promulgated thereunder, said Plaintiffs have suffered damages including humiliation, embarrassment and emotional distress as alleged heretofore.

COUNT III:

Discrimination in Violation of The Americans With Disabilities Act

138.    Plaintiffs incorporates and realleges by reference the foregoing paragraphs 1 through 151

inclusive, as if they were fully set forth herein.

139.    Defendant acted and omitted with deliberate indifference, which caused A.H., H.H., C.U.

and M.W. to be vulnerable to and subjected to battery.

140.    Defendant acted and omitted with deliberate indifference, which caused H.H. to be

vulnerable to and subjected to harassment.

141.    Defendant's actions and omissions were based on said Plaintiffs' disabilities.

142.    Defendant's actions and omissions altered said Plaintiffs' educations and subjected them

to a hostile educational environment, and denied said Plaintiffs services, programs and activities

that were full and equal to programs and activities provided to non-disabled persons.

143.    Defendant's actions and omissions violated 42 USC §12132, Section 202 of Title II, and

the regulations promulgated thereunder.

144.    As a result of Defendant's failure to comply with its duties under Title II, said Plaintiffs

have suffered damages including humiliation, embarrassment and emotional distress as alleged

heretofore

COUNT IV:

Negligent Supervision

145.    Plaintiffs incorporates and realleges by reference the foregoing paragraphs 1 through 158

inclusive, as if they were fully set forth herein.

146.    Plaintiffs and Defendant were parties to a school district – pupil relationship at all relevant

times.

147.   Plaintiffs were unable to protect themselves from battery, seclusion and harassment by Defendant.

148.   The instruction and services which Defendant provided to Plaintiffs and the premises where Defendant provided said instruction and services were under Defendant's control.

149.   Defendant knew or had constructive knowledge that Ms. Hagley harassed Plaintiff H.H. prior to battering H.H.

150.   Defendant knew or had constructive knowledge that its employees or contractors had harassed or battered other disabled students at River Terrace prior to the harassment and battery of Plaintiffs C.U., M.W. and A.H.

151.   Defendant had a duty to Plaintiffs to exercise reasonable care to supervise and control Ms. Fountain, Ms. Hagley, and Mr. Spencer because of DCPS' relationship with Plaintiffs C.U., A.H., M.W., and H.H.

152.   Defendant had a duty to Plaintiffs to exercise reasonable care to prevent the battery and harassment of the Plaintiffs.

153.   Defendant breached said duties to said Plaintiffs.

154.   Defendant's breach of its duty of care to said Plaintiffs proximately caused the injuries to the Plaintiffs which are alleged heretofore.

155.   As a result of the Defendant's breach of its duties to said Plaintiffs, the Plaintiffs have suffered damages including humiliation, embarrassment and emotional distress.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

a.   Enter judgment in Plaintiffs' favor against Defendant for violating their constitutional rights;

b. Enter judgment in Plaintiffs favor against Defendant for violating Section 504 of the Rehabilitation Act and Title II of the ADA;

c. Enter judgment in Plaintiffs' favor against Defendant for negligent supervision;

d. Injunctive relief in the form of a court order requiring the Chancellor to implement new policies related to the following: official hiring standards and procedures for staff who will work with students with disabilities, a review of all training and staffing at all DCPS schools who work with students with disabilities; implementation of official training and determination on appropriate staffing levels of the same.

e. Award Plaintiffs' compensatory damages, in the amount of 20 million dollars ($20,000,000.00);

f. Award Plaintiffs' punitive damages, in an amount to be determined at trial;

g. Award Plaintiffs' attorney's fees and the costs of this litigation;

h. And any and all further just relief this Court sees fit.

JURY TRIAL DEMAND

Plaintiffs request a trial by jury.

DATED: July 10, 2020                                                 Respectfully Submitted,

                                               /s/ Yaida O. Ford_____

                                                Yaida O. Ford, Esquire
                                                DC Bar No. 497013
                                                Ford Law Pros, P.C.
                                            10 G Street NE, Suite 600
                                                Washington DC 20002
                                              (202)792-4946 (phone)
                                               yford@fordlawpros.com

                                                /s/ Nigel M. Atwell
                                                Nigel M. Atwell, Esquire
                                               The Law Office of Nigel M. Atwell, PLLC
                                               DC Bar Number 422509
                                               1440 G Street NW
                                               Washington, DC 20005
                                               Phone:  202-627-6926
                                               nigel@lawofficeofnigelmatwell.com
                                               Attorneys for Plaintiffs